IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEVONERE JOHNSON,

                Plaintiff,

v.

WILLY STREET CO-OP NORTH,

                Defendant.

OPINION AND ORDER

22-cv-81-wmc

---

Plaintiff Devonere Johnson, who represents himself, was granted leave to proceed with a claim that defendant Willy Street Co-op North denied him "double dollars" rewards on account of his African American race in violation of 42 U.S.C. § 1981. (Dkt. #11.) Plaintiff has filed a motion for summary judgment, arguing that he is entitled to prevail. (Dkt. #23.) Defendant Willy Street Co-op North has filed a cross-motion, arguing that it is entitled to summary judgment because plaintiff has no evidence to support his claim. (Dkt. #24.) For the reasons explained below, the court will grant defendant's motion, deny the motion filed by plaintiff, and dismiss this case.

BACKGROUND[1]

This case concerns Johnson's membership in the Willy Street Cooperative ("Willy Street"), which is a grocery business with multiple locations in Madison, Wisconsin, where

---

[1] The following facts are undisputed unless otherwise noted. Plaintiff, whose pleadings are not sworn, did not file proposed findings of fact or evidentiary materials in support of his motion for summary judgment. Likewise, plaintiff's responses to defendant's proposed findings of fact are argumentative, conclusory, and cite to no evidence. Thus, plaintiff has failed to comply with the court's procedures on summary judgment, which were provided to the parties during the preliminary pretrial conference. (Preliminary Pretrial Packet (dkt. #20) Proc. to be Followed on


customers may purchase food, goods, and services. By policy, all members of Willy Street are considered owners. Ownership at Willy Street is open to all but may be terminated under Bylaw 3.8 "for cause," including "[w]illful misconduct or disruptive behavior on a second occasion after clear written warning that such conduct or behavior could result in loss of Ownership status." Bylaw 3.8.4 requires Willy Street to provide a clear written warning that a member's willful misconduct or disruptive behavior could result in loss of ownership status.

Johnson, who became a member of the Cooperative in 2021, claims that he was discriminated against based on his race when he did not receive vouchers for an incentive program called "double dollars" on two occasions while shopping at its location on the north side of Madison ("Willy Street North"). By denying him double dollars vouchers, Johnson alleges that he did not receive the same benefits as other customers. (Dkt. #9, at 3.) He is seeking $150,000.00 in monetary damages. (*Id*. at 4.)

The double dollars program is a nutrition incentive program helping those using FoodShare/QUEST, which is a benefits program offered by the Wisconsin Department of Health Services to eligible individuals, similar to food stamps or the Supplemental Nutrition Assistance Program ("SNAP"). The double dollars program, which helps purchase certain types of food, including fresh fruits and vegetables, runs from October

---

Mot. For Summ. Judg., §§ I-II). Because plaintiff has not put into dispute the facts proposed by defendant, the court treats those facts as undisputed. *Id*. § II(C); *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys*., 274 F.3d 1174, 1178 (7th Cir. 2011) (the court considers only evidence set forth in a proposed finding of fact with proper citation); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018) (disregarding summary-judgment "submissions that make legal arguments and assert legal conclusions, which are not factual statements at all").

2

through March every year. If a customer is eligible to receive vouchers through the double dollars program, those vouchers are typically issued by a cashier at the cash register once the customer's purchase has been completed.

Johnson claims that he was denied double dollars vouchers after making a purchase at Willy Street North on an unspecified date in October of 2021. (Dkt. #9, at 2.) After Johnson complained about not receiving them, a store employee (Anya Firszt) determined that the cashier had mistakenly forgotten to issue them, and ensured that Johnson received them. Without contradiction, Willy Street represents that it has a policy that employees are required to follow when a cashier forgets to issue double dollars vouchers. According to that policy, whenever a cashier forgets to issue double dollars vouchers, employees are required to confirm whether or not the vouchers have been issued. Employees can look up receipts under the relevant "owner number" assigned to Willy Street's members and determine how many vouchers are owed to the customer. Once this is determined, it is Willy Street's general practice to promptly issue the missed vouchers.

Johnson alleges that he was also denied double dollars vouchers on another occasion because of an incident he had with a white customer that occurred on January 3, 2022. (Dkt. #9, at 3.) During this incident, Johnson claims that the white customer caused his shopping cart to crash into Johnson's cart, which then collied into a nearby "mask station," knocking it over. (*Id*.) After the incident occurred, Johnson claims that staff at Willy Street North followed him through the store and prevented him from completing his shopping. Johnson also claims that he was denied vouchers as a result of the January 3 incident during a subsequent shopping trip on January 5, 2022. When he asked the cashier

for the vouchers on that occasion, Johnson alleges that she replied he would need to speak with a manager.

In response, Willy Street presents surveillance video of the incident that occurred on January 3, 2022, showing that Johnson struck the other customer's cart with a children's shopping cart, causing the other customer's cart to crash into a station near the doorway with masks. (Ex. G & H, Dkt. #26.) Moreover, the other customer immediately backed away from Johnson, who was clearly agitated. (*Id*.) Contrary to his representations, Johnson also was allowed to continue grocery shopping that day and eventually left the store after making a purchase, even though he refused to wear a mask in violation of the Dane County mask mandate that was in place at that time due to the COVID-19 pandemic, despite being presented one by the manager. This was also not the first time Johnson refused to wear a mask while shopping at Willy Street North in violation of the Dane County mask mandate.

Willy Street also denies Johnson's allegation that he was denied double dollars vouchers due to racial discrimination. As a cooperative, Willy Street first responds that it has Bylaws governing the organization and its owners that emphasize non-discrimination. In particular, the Bylaws address Willy Street's adherence to seven "cooperative principles," including: "Principle 1 – Voluntary and Open Ownership: Cooperatives are voluntary organizations, open to all persons able to use their services and willing to accept the responsibilities of Ownership, without gender, social, racial, political or religious discrimination." The Bylaws further establish that "[t]he Co-op shall not discriminate on

the basis of age, race . . . or any other category protected by local, state or federal law." Relatedly, all Willy Street locations have a posted sign that states:

> Everyone Welcome
> At our Co-op, we assert the right of all people to be treated with respect and dignity without reference to race, color, religion, gender, sexual orientation, gender identity, national origin, age, disability, genetic information, marital status, amnesty, or status as a covered veteran.

Finally, the employee handbook conveys that employees are "expected to treat every owner, customer, client, or visitor with the utmost respect and courtesy during your working time."

On January 4 and 5, 2022, employees at Willy Street North investigated the January 3 incident involving Johnson and determined that further action was required to avoid his future misconduct. Consistent with Bylaw 3.8.4, therefore, Willy Street provided Johnson with a letter explaining that it expected him to (1) refrain from threatening behavior towards other customers, staff, or Co-op property; and (2) wear a face covering while shopping in the Co-op pursuant to the Dane County mask mandate then in place. The letter, which was provided to Johnson on February 1, 2022, warned Johnson that continued issues with his behavior could result in the loss of his ownership status. Although his account is currently inactive because he did not pay the required annual equity payment, Johnson's membership has not been involuntarily terminated.

OPINION

The parties have cross-moved for summary judgment. Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact

5

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id*. Summary judgment is properly entered "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087-88 (7th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The fact that the parties have filed cross-motions for summary judgment does not alter their burden as movants. In evaluating each party's motion, the court must "'construe all inferences in favor of the party against whom the motion under consideration is made.'" *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). However, the nonmovant is only entitled to favorable inferences that are supported by admissible evidence, not those based upon mere speculation or conjecture, *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017), or upon "[c]onclusory statements, not grounded in specific facts," *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016). Facts need only be taken in the light most favorable to the nonmoving party where there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). More specifically, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted

by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*.

Because plaintiff represents himself, his pleadings are entitled to a liberal construction, meaning they are subject to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, a plaintiff's *pro se* status does not relieve him of the burdens of complying with the court's procedures or the requirements of Rule 56. *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998). Likewise, a district court need not, even for *pro se* plaintiffs, "scour the record looking for factual disputes," and a *pro se* party cannot avoid summary judgment without demonstrating a material dispute of fact. *Greer v. Bd. of Ed. of the City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001).

Here, plaintiff claims that defendant violated 42 U.S.C. § 1981(a), which protects a person's right to "make and enforce contracts" the same as "white citizens," including "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." In this context, "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Although typically asserted in the employment context, § 1981 has also been applied in retail transactions. *See Bagley v. Ameritech Corp.*, 220 F.3d 518, 519-20 (7th Cir. 2000) (attempting to buy a cordless phone); *Morris v. Office Max, Inc.*, 89 F.3d 411, 414 (7th Cir. 1996) (attempting to buy office supplies).

To prevail on a § 1981 claim, a plaintiff must establish that: (1) he is a member of a racial minority; (2) defendant intended to discriminate based on race; and (3) the discrimination deprived the plaintiff of one or more rights enumerated in § 1981, such as the making and enforcing of a contract. *Black Agents & Brokers Agency, Inc. v. Near N. Ins. Brokerage, Inc.*, 409 F.3d 833, 837 (7th Cir. 2005). In order to satisfy the third element in this context, however, a plaintiff must present evidence that he was "actually prevented from making a purchase." *Rogers v. Elliott*, 135 F. Supp. 2d 1312, 1315 (N.D. Ga. 2001). Further, a § 1981 plaintiff must "prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020). If plaintiff meets each of the required elements, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 760 (7th Cir. 2022) (applying the burden-shifting framework found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) in a § 1981 employment discrimination case). The burden then shifts back to the plaintiff to show why the defendant's explanation is pretextual. *Id.*[2]

Here, plaintiff does not present evidence showing that he was prevented from making a purchase or denied double dollars vouchers due to his race. Instead, he relies only on the allegations made in his pleadings, and his own personal belief about the motives of defendant's employees at the Willy Street North location. A plaintiff's bare assertion

---

[2] The Seventh Circuit has moved away from applying the *McDonnell Douglas* burden-shifting approach, but the result does not change if the court considers what a reasonable jury could find based on the evidence as a whole, even when viewed in a light most favorable to plaintiff.

of discriminatory mistreatment is not sufficient to establish a link between his race and the treatment he received. *Winsley v. Cook Cty.*, 563 F.3d 598, 605 (7th Cir. 2009) (citing *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337 (7th Cir. 1991) ("[A] plaintiff's speculation is not a sufficient defense to a summary judgment motion.")); *Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 787 (7th Cir. 2001) (a plaintiff asserting discrimination "must present more than his own, subjective self-appraisal to create a genuine issue of fact").

Even more telling, contrary to plaintiff's original allegations, the undisputed evidence shows that plaintiff received the double dollars vouchers that he claims were denied him in October 2021, consistent with defendant's policy of providing them once an employee confirmed that certain vouchers were not dispensed by the cashier. Further, the evidence demonstrates that plaintiff continued with his grocery shopping after the incident involving another customer's shopping cart on January 3, 2022, *and* paid for his purchase before leaving the store. "Virtually all federal courts that have analyzed Section 1981 claims in the retail merchandise context have required the plaintiff to show that he was actually prevented from making a purchase." *Rogers*, 135 F. Supp. 2d at 1315 (citations omitted). To establish a deprivation, the plaintiff must demonstrate "the loss of an actual, not speculative or prospective, contract interest." *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003).

Regardless, at summary judgment, plaintiff does not dispute that he was allowed to make a purchase on January 3, 2022, and he has not shown that he was actually denied the opportunity to receive double dollars vouchers under defendant's policy, much less

offered any evidence from which a reasonable jury could infer that a clerk's original failure to do so immediately was based on his race.[3]

Indeed, as defendant points out, any delay in issuing double dollars vouchers to plaintiff was not due to his race but required by defendant's policy instructing employees to verify that the cashier mistakenly failed to issue them. (Dkt. #24, at 18-19.) Evidence that defendant's employees were following standard procedures qualifies as a legitimate, nondiscriminatory reason for the delay in issuing plaintiff's vouchers. *Rippley v. Teamsters Local 525*, No. 10-cv-0988, 2012 WL 734166, at *7 (S.D. Ill. March 6, 2012). Plaintiff has offered nothing to suggest that the defendant's asserted reason is pretextual.

Summary judgment is the "put up or shut up" time in litigation. *Brown v. CACH, LLC*, 94 F.4th 665, 667 (7th Cir. 2024). Plaintiff has neither submitted any evidence, nor otherwise complied with the court's procedures, of which he was aware. (Dkt. #20.) Because he has not submitted evidence that he was *actually* prevented from making a purchase or from which a reasonable jury could infer discriminatory intent on the part of defendant's employees, defendant's motion for summary judgment must be granted and plaintiff's motion must be denied.

---

[3] As the court has previously concluded, plaintiff's allegation that he was subjected to discriminatory surveillance while shopping does not state a § 1981 claim. (Dkt. #11, at 3.) In addition, to the extent that plaintiff attempts to assert additional claims in his motion for summary judgment (or in response to defendant's), including claims for false imprisonment, interference with contract, racial profiling, defamation, and intentional infliction of emotional distress (dkt. #23, at 4), the court will not consider these new claims because they have not been properly and timely raised.

ORDER

IT IS ORDERED that:

1. Plaintiff Devonere Johnson's motion for summary judgment (dkt. #23) is DENIED.

2. Defendant Willy Street Co-op North's motion for summary judgment (dkt. #24) is GRANTED.

3. The clerk's office is directed to enter judgment for defendant and close this case.

Entered this 27th day of March, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge